FILED
IN CLERKS OFFICE

2004 JUN 30 A 11: 46

U.S. DISTRICT COURT
DISTRICT OF MASS.

| United States District Court for the District of Massachusetts | |
|---|---|
| NEW MILLENNIUM MEAT CORP. a/k/a NEW MILLENIUM MEATS CORP. a/k/a NEW MILLENIUM MEATS CORPORATION a/k/a NEW MILLENNIUM MEAT INC. a New York Corporation, Plaintiff<br><br>v.<br><br>CAMBRIDGE PACKING COMPANY a/k/a CAMBRIDGE PACKING CO, INC., a Massachusetts Corporation, Defendant | Case No. 04cv<br><br>COMPLAINT AND JURY DEMAND<br><br>FILING FEE PAID:<br>RECEIPT #<br>AMOUNT $<br>BY DPTY CLK<br>DATE |

## I.  Nature of this Action

1.  This is an action by New Millennium Meat Corp. against Cambridge Packing Company for trademark infringement under 15 USC § 1125(a) arising from Defendant's use of New Millennium's Regal Harvest® brand for specialty beef and beef products to sell its own beef in competition with New Millennium. Plaintiff also complains of deceptive acts in violation of Massachusetts Chapter 93A, §§ 1-11, and Chapter 110B, §§ 1-6, unfair competition and unjust enrichment. The Plaintiff further claims the Defendant committed interference with existing contract rights, interference with prospective contract rights and interference with advantageous business relations under Massachusetts common law.

**Jurisdiction and Venue**

2. This Court has subject matter jurisdiction under the Lanham Act, 15 *USC* §§ 1119 and 1121(a), as well as under 28 *USC* §§ 1331, 1337, and 1338(a). Pursuant to 28 *USC* §§ 1338(b) and 1367(a), this Court has supplemental jurisdiction over state statutory and common law claims.

3. Venue is proper, pursuant to 28 *USC* § 1391(b) and (c), in the District of Massachusetts because the Defendant resides in this state and a substantial part of the events giving rise to the claims occurred in this state.

## II.   Parties

4. The Plaintiff, NEW MILLENNIUM MEAT CORP. a/k/a NEW MILLENIUM MEATS CORP. a/k/a NEW MILLENIUM MEATS CORPORATION a/k/a NEW MILLENIUM MEAT INC. (hereinafter collectively referred to as "New Millennium") is a New York corporation with its principal place of business at 2010 Commerce Drive, Red Oak, Iowa. It is engaged in creating value through brand development in the niche wholesale beef business. New Millennium's products include Regal Harvest® Natural Beef, including boxed beef for steaks, filets, strips, ribeyes, top rounds, and other quality beef cuts.

5. Defendant CAMBRIDGE PACKING COMPANY a/k/a CAMBRIDGE PACKING CO, INC., (hereinafter referred to as "Cambridge") is a Massachusetts corporation with its principal place of business at 41-43 Foodmart Road, Boston, Massachusetts. Cambridge's principal offers are Bruce Rodman and Alan Roberts. Defendant is engaged in the business of packing, processing, advertising and selling meat and meat products in Massachusetts and other areas.

### III. Plaintiff's Operations and Trademark Development

6. Plaintiff is engaged in the business of selling and distributing beef and beef products under its unique, registered and valuable brand names including a family of products sold under the general brand Regal Harvest®. The products sold under this brand are of a very specific and unique quality and specifications in relation to other meat and meat products.

7. In 2002, New Millennium and another company, Red Oak Farms, Inc., collaboratively created and developed the brand Regal Harvest® to promote a special type of beef derived from Holstein breed cattle. The combination of a unique cattle feeding program with the Holstein breed produces a very tender, consistent and desirable beef product. New Millennium sought to capitalize on the special characteristics of this high quality beef by associating it with the Regal Harvest brand. The brand development process arose with great cost, expense and research.

8. On May 27, 2003, Red Oak Farms registered the Regal Harvest® mark with the United States Patent and Trademark Office (US PTO) under registration number 2,719,319. On June 10, 2003, Red Oak Farms assigned to New Millennium all right, title and interest, including good will registered the Regal Harvest® trademark. That assignment was recorded through a Trademark Assignment Abstract of Title at the US PTO on or about June 19, 2003.

9. New Millennium's meat products were sold under the Regal Harvest® brand at all relevant times before and after federal trademark registration. At all relevant times, the Regal Harvest® brand was famous, well known and associated with high quality niche beef and beef products in Massachusetts among retail and institutional meat buyers. The brand under which a beef product is sold is fundamental to establishment of market share, sales and profitability in the highly competitive beef wholesaling market place. In this respect, New Millennium guarded against misappropriation of its Regal Harvest® trademark to prevent others from cashing in on

established market reputation. New Millennium's business depends upon promoting the quality, reputation and good will associated with the Regal Harvest® brand.

10. In October 2002, New Millennium entered into a business and contractual relationship with Defendant Cambridge under which Cambridge had the opportunity to purchase the unique Holstein beef from New Millennium and utilize the Regal Harvest® trademark to resell the beef to retail and institutional food customers.

11. The business and contractual relationship between New Millennium and Cambridge ended on or about June 30, 2003. However, after that date, Defendant continued utilizing the Regal Harvest® brand to sell beef products to its customers while procuring beef from sources other than New Millennium. In doing so, Cambridge engaged in falsely advertising Regal Harvest® and trademark infringement without New Millennium's consent.

12. Defendant has actually called up customers and accounts of New Millennium whose identities Defendant obtained from New Millennium's vendor of specialty beef products in California, and sold beef products to them by purloining the Regal Harvest® name. New Millennium believes that Defendant also used its marks, symbols, logos, packaging design and related product-packing differentiation to effectuate sales. After losing the contractual right to sell Regal Harvest® beef, based on Defendant's false, deceptive, and misleading advertising and related representations, Defendant has been selling the Regal Harvest® brand meat products in direct competition with New Millennium.

13. Defendant's false, deceptive, and misleading advertising, trademark infringement and related misrepresentations are material to New Millennium and have resulted and continue to result in lost sales and profits to New Millennium and causing it continuing irreparable harm. Defendant's false, deceptive and misleading advertising was made and being made to deceive potential purchasers; the design of such claims is to affect purchase decisions relating to "Regal Harvest." Such misrepresentations have harmed, and will continue to harm New Millennium and are made by Defendant with the knowledge and intent of the harm done to New Millennium.

## First Claim

### (*Lanham Act* Violation)

14. At all relevant times, Defendant knew its representations of fact were literally false, deceptive, and misleading because it did not own or have a right to use the Regal Harvest® brand and did not have a line of meat products developed or specified in accord with Plaintiff's Regal Harvest® product standards until it infringed upon and misappropriated Plaintiffs' trademark, product line, and sales.

15. On two separate occasions after June 30, 2003, New Millennium demanded in writing that Cambridge halt the use of the Regal Harvest® brand. Cambridge intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith continued using the brand despite the fact that it knew or should have known that it had no right to do so.

16. By false, deceptive, and misleading representations, Defendant willfully intended to and did trade on the good name and reputation of New Millennium's brand by advertising, promoting and selling Regal Harvest® in commerce.

17. The *Lanham Act* provides, in part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.
>
> 15 *USC* §1125(a).

18. Defendant's false, deceptive, and misleading representations of fact violate the 15 *USC* § 1125(a). Defendant's advertising and related representations are material, deceitful, and likely to cause confusion or mistake among customers and potential customers of New Millennium in the marketplace. Purchasers of beef products were and are likely to, and did, rely on Defendant's misrepresentations.

19.  Defendant's false, deceptive, and misleading representations and sales have caused and continue to cause confusion, mistake, and deception among New Millennium's customers and the public. New Millennium has been deprived of profits and revenue that would otherwise have resulted from sales to customers. Defendant has achieved profits from wrongful sales that were made unjustly and unlawfully. Such willful acts will continue to injure New Millennium unless Defendant is enjoined from using the Regal Harvest® brand.

## Second Claim
### (Common Law Unfair Competition)

20.  Under the common law of unfair competition of the Commonwealth of Massachusetts, Defendant's advertising and related actions constitute intentional unfair competition in violation of New Millennium's rights. Defendant's actions have caused injury to New Millennium and its product sales, business relationships, and reputation. Defendant's business conduct is contrary to honest practice in industrial or commercial matters.

21.  Defendant has acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure New Millennium. Defendant has appropriated and used "Regal Harvest," which is a brand in competition with New Millennium that carries a unique pecuniary interest created by New Millennium through the expenditure of labor, skill, and money. Defendant has used the name Regal Harvest® to identify its goods, services, or business that is in direct competition with the prior predictable interest created and marketed by New Millennium.

## Third Claim
### (Common Law Unjust Enrichment)

22.  Defendant has benefited from increased sales, profits, market share, reputation, goodwill, some of which New Millennium would have earned, but did not as a direct result of Defendant's actions.

23. Defendant knew, or should have known, that the increased sales, profits, market share, and reputation that it received resulted directly from its literally false, deceptive, and misleading advertising. Defendant has acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure New Millennium. New Millennium has no adequate remedy at law for some such injuries.

24. It would be unjust for Defendant to retain the benefits conferred upon it as a result of its literally false, deceptive, and misleading advertising, and Defendant's continuance of such practices while knowing of the harm that they could do.

### Fourth Claim
### (Intentional Interference with Contract Rights)

25. On or about April 10, 2002, the Plaintiff New Millennium and Brawley Beef, Inc. (hereinafter "Brawley"), a US Packing plant located in southern California, entered into a written contract wherein Brawley Beef was to slaughter Holstein steers to produce an "All Natural Beef" product. New Millennium was to purchase and successfully market the "All Natural" Holstein beef, which was slaughtered, produced and packaged by Brawley, under New Millennium's Regal Harvest® brand.

26. Commencing on or about October of 2002, the Plaintiff New Millennium sold its Regal Harvest® brand product (raised and killed by Brawley) to Cambridge Packing for shipment and re-sale to food service establishments, restaurants, hotels and other end-users. The Defendant Cambridge had knowledge of the existence of the New Millennium/Brawley relationship and the New Millennium/Brawley Agreement.

27. The Defendant had knowledge of the uniqueness and value of the Brawley "All Natural Beef" Program. Cambridge, on numerous times and in an improper manner, without the authorization, consent or approval of New Millennium, had direct dealings with Brawley and its agents/representatives. Further, Cambridge maliciously induced Brawley to deal with Cambridge directly, and not via New

Millennium, in direct breach of the terms and conditions of the New Millennium/Brawley Agreement.

28. Based upon information and belief, Cambridge represented to Brawley that Cambridge could develop a brand name for Brawley's "All Natural Beef" product that would provide Brawley with a more favorable revenue stream than Brawley was receiving pursuant to the terms and conditions of the New Millennium/Brawley Agreement.

29. The intentional and unjustified acts of Cambridge persuaded, induced and coerced Brawley to breach the terms and conditions of the New Millennium/Brawley Agreement. The Plaintiff lost the benefit of it's contract with Brawley which made the Brawley "All Natural Beef" product inaccessible to New Millennium. The Plaintiff lost the marketing fees and other income and commissions to New Millennium which New Millennium would have received from the utilization of the Brawley "All Natural Beef" product.

Fifth Claim

(Interference with Prospective Contractual Relations)

30. On or about June 2003, during the same time that New Millennium terminated the Defendant's exclusive rights to sell the Regal Harvest brand, New Millennium encountered difficulties with Brawley. Brawley was desirous to develop its own product brand and to cease selling its particular meat products to New Millennium.

31. Based upon information and belief, Cambridge Packing represented to Brawley that Cambridge could provide the delivery of the Brawley "All Natural Beef" product to end-users without the need for any involvement by New Millennium and in direct violation of the terms and conditions of the New Millennium/Brawley Agreement.

32. New Millennium's business dealings with Brawley ended; however, Cambridge continued to sell Regal Harvest® products. On or about June 30, 2003, New Millennium ceased selling Regal Harvest® products to Cambridge. The Defendant

intentionally, maliciously and through the use of improper motive and means, continued to sell New Millennium's Regal Harvest® products without Plaintiff's authorization or consent thereby resulting in loss of income, commissions and revenues to the Plaintiff.

33. The Defendant Cambridge would procure Brawley "All Natural Beef" products direct from the Brawley plant, using New Millennium boxes and the Regal Harvest® brand without the authorization or consent of New Millennium.

34. In addition, the Defendant Cambridge would repackage said Brawley "All Natural Beef" products using Plaintiff's Regal Harvest packaging materials, trademarks and labels, and sell and distribute the Regal Harvest® brand directly to New Millennium's customers.

35. The acts of the Defendant Cambridge in purchasing Brawley "All Natural Beef" products direct from Brawley and repackaging the same without the authorization and consent of the Plaintiff, directly precluded New Millennium from receipt of both Brawley and end-user commissions and revenues and was done by Cambridge in direct violation of New Millennium's termination of a business relationship with Brawley and Cambridge. Further, the Defendant Cambridge continued to sell Plaintiff's Regal Harvest® brand after notification to cease.

36. As the direct result of Cambridge's continued and unauthorized acquisition of Brawley "All Natural Beef" product from Brawley, the Plaintiff New Millennium was unable to renegotiate terms for an ongoing relationship with Brawley and the procurement of Brawley "All Natural Beef".

37. The Plaintiff was further harmed by the Defendant's conduct and interference which resulted in New Millennium's inability to sell the Brawley "All Natural Beef" under the Regal Harvest® brand name directly to customers and end-users. Based upon information and belief, Cambridge has sold and continues to sell the "Brawley All Natural Beef" line of products.

38. The Defendant acted with intent and malice and deliberately caused New Millennium to lose the financial gains and market share benefits that New

Millennium would have received if New Millennium had been able to further develop its sales and distribution of the "All Natural Beef" Regal Harvest® brand name.

### Sixth Claim

### (Interference with Advantageous Business Relations)

39. After New Millennium and Cambridge terminated their contractual relationship, New Millennium had a legitimate business expectation that it would continue selling Regal Harvest® beef and beef products to retail and institutional customers in Massachusetts, including pre-existing purchasers of Regal Harvest® beef and beef products.

40. New Millennium approached those Regal Harvest® customers after June 2003 to achieve such sales. However, New Millennium was unable to continue selling Regal Harvest® products to those customers because Defendant Cambridge was selling beef products under the Regal Harvest® brand to those customers.

41. Cambridge knew that its sales to those customers interfered with the potential for New Millennium to engage in a business relationship with those Regal Harvest® customers.

42. New Millennium was thus deprived of the revenue and consumer recognition that it legitimately expected from continued sales of Regal Harvest® branded products to those customers that had purchased or wished to purchase Regal Harvest® products.

### IV.   Request for Relief

43. For the foregoing reasons, New Millennium requests judgment against Defendant for:

    a. An accounting for all gross revenues generated by Defendant through its use of the Regal Harvest® name;

    b. An accounting for all gross revenues generated by Defendant through its sales of the Brawley "all natural beef" products;

    c. Disgorgement of all profits received from the sale of Regal Harvest® brand meats sold by Defendant, and judgment for New Millennium for all such sums;

    d. Compensatory damages to New Millennium in an amount to be determined at trial, including New Millennium's mitigation costs.

    e. Enhanced damages to New Millennium of at least treble the amount of compensatory damages, due to Defendant's intentional, willful, deliberate, malicious, egregious, and bad faith actions, and to deter such action in the future;

    f. New Millennium's costs for bringing this action, including reasonable attorneys' fees and expenses associated with bringing this action, and prejudgment interest to the extent allowed by law.

## V. Jury Demand

44. Plaintiffs respectfully demand trial by jury in Boston, Massachusetts. June 28, 2004.

Respectfully submitted by the Plaintiff:

**NEW MILLENNIUM MEAT CORP. a/k/a NEW MILLENIUM MEATS CORP. a/k/a NEW MILLENIUM MEATS CORPORATION a/k/a NEW MILLENNIUM MEAT INC.**

By /s/ Kellie A. Dunn

Kellie A. Dunn, Esquire BBO# 561301
Law Office of Kellie A. Dunn
P.O. Box 522
Chelmsford, MA 01824
Telephone: (978) 804-6687
Facsimile: (978) 446-9197
Email: KAD4par@aol.com
*Attorney for Plaintiff*

DATED: June 28, 2004

Respectfully submitted by the Plaintiff:

**NEW MILLENNIUM MEAT CORP. a/k/a NEW MILLENIUM MEATS CORP. a/k/a NEW MILLENIUM MEATS CORPORATION a/k/a NEW MILLENNIUM MEAT INC.**

By /s/ Kellie A. Dunn

Kellie A. Dunn, Esquire BBO# 561301
Law Office of Kellie A. Dunn
P.O. Box 522
Chelmsford, MA 01824
Telephone: (978) 804-6687
Facsimile: (978) 446-9197
Email: KAD4par@aol.com
*Attorney for Plaintiff*